IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ALEIGHA WOODS, individually and on behalf of the Class, and others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>CLUB CABARET, INC.,<br>    Defendant. | Case No. 1:15CV01213-JEH |

### Order

Before the Court is the Plaintiff's, Aleigha Woods's (Woods) Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 USC § 216(b) (D. 22) and the Defendant's, Club Cabaret, Inc.'s (Club) response thereto. (D. 30). The motion is GRANTED.

### I

Woods filed this putative collective action on May 26, 2015. She alleges that Club Cabaret misclassified her and other entertainers as independent contractors, denying them minimum wages and requiring them to pay to work, in violation of the Fair Labor Standards Act (FLSA), 29 USC § 20, *et seq*, and the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq*. The Complaint seeks permission to proceed as a collective on behalf of "[a]ll persons who work(ed) as entertainers for Defendant at any time within three years of the filing of this Complaint." (D. 1 at ECF p. 13.) Since then, fifteen additional entertainers have joined the action as opt-in Plaintiffs, although one withdrew her consent. (D. 4, 7, 11, 12, 13, 14, 15, 17, 18, 19, 25, 26, 31, 36, 37.) The Defendant filed its Answer on July 31, 2015, which also alleged seven

1

counterclaims. (D. 20.) To date, the parties have exchanged only initial disclosures, the remainder of the discovery schedule being stayed until after a ruling on the motion now before the Court.

## II
### A

As alleged in the Complaint and supported by Plaintiff's exhibits to her motion, Club Cabaret is an adult entertainment establishment located in Creve Coeur, Illinois. It is open from 11:00 am until 4:00 am Monday through Saturday. Customers pay a cover charge of $5.00 after 6:00 pm on Monday through Thursday and $7.00 after 6:00 pm on Friday and Saturday. The Club in turn provides customers with adult entertainment through topless and fully-nude exotic dancing. For example, Club Cabaret's entertainers "offer table and couch dances and hourly promotions for t-shirts, hats, or cigars." (D. 24-1 at ECF p. 2.) Club Cabaret also offers other services such as food, hair-care, nail-care, cigar sales, shoe-shine, and car washes. Id. Club Cabaret is equipped with a dressing room, a main stage with a pole, a satellite stage with a pole, a VIP suite, a VIP wine room, and a "floor" where customers congregate. Club Cabaret employs managers, bartenders, cooks, waitresses, bouncers, disc jockeys, massage therapists, barbers, along with others. Most relevant to this lawsuit, Club Cabaret also has "over 100 beautiful dancers" who provide entertainment to its customers. Id.

Regarding the dancers, Club Cabaret hires entertainers to dance at its club which it classifies as independent contractors, rather than employees. As part of the hiring process, women fill out an application, have an interview, and are told that they must obtain an adult-entertainment permit with the county. Once hired, the entertainers are required to follow a work schedule set forth by the Club's manager, Jill Lang. Each entertainer must work a minimum of 24 hours

per week. The scheduled shifts that each entertainer is required to work are posted in the Club's dressing room. If an entertainer does not show up for her scheduled shift, or if she is late for it, she must pay a fine. If she misses her entire shift, she is required to pay the Club's "house fee" for her shift. If she is late for her scheduled shift, she must pay the Club $20. Additionally, if an entertainer has to leave the Club for any reason before her scheduled shift is over, she must first get management approval. She must also pay the Club a fine for not finishing her shift.

Once an entertainer shows up for her scheduled shift, she checks in with the Club's DJ. The Club's DJ is required to approve each entertainer's appearance before she can begin dancing. When reviewing the entertainer's appearance, the DJ refers to a checklist made by Club Cabaret. The checklist requires the DJ to ensure that each entertainer's hair is done, her nails have polish on them, her breath does not smell bad, and that she is not wearing perfume, oil, or glitter. If an entertainer does not meet one of these criteria, she is not allowed to dance, or in the alternative, she has to pay the Club a $20 fine.

Once her appearance is approved by the DJ, entertainers perform dances for customers. All entertainers are required to follow the Club's stage rotation. They first dance on the Club's main stage for 2–3 songs. They then rotate to the Club's satellite stage for 2–3 songs. Next, entertainers dance with customers on the floor, providing either table or couch dances. Additionally, each hour, the entertainers are required to participate in the Club's promotions. During this time, the entertainers are required to wear knee-length gowns, appear on the Club's main stage, hold the Club's merchandise, and stand no further than two feet away from another entertainer.

While at Club Cabaret, each entertainer is required to abide by the Club's rules. For example, while working, entertainers cannot chew gum, they have to

smile while on stage, they must wear a gown that is knee-length or longer while not on stage, and they cannot use their cell phones while in the Club. Additionally, entertainers are to change their gowns every 2–3 hours. They are also required to wear high-heel shoes that are at least four inches tall while working. These rules are posted in the Club's dressing room. If an entertainer breaks any of the Club's rules, she must pay a $20 fine. If an entertainer has too many violations, she is placed on the Club's "bad girl" list and must pay the Club $10 per day for an entire month. (D. 24-2 at ECF p. 4).

Central to the claims in this case, Club Cabaret does not pay its entertainers anything. Instead, the Club has classified its entertainers as independent contractors, and as such, they do not receive an hourly wage from the Club. Entertainers must pay the Club each scheduled shift they work, while they keep the gratuities they receive from customers. Each shift, an entertainer must pay Club Cabaret a fee referred to as the house fee or rent fee. The Club's house fees range from $55–$65 per shift, depending on what shift the entertainer works, these amounts being $55 for day shifts and $65 for night shifts. Additionally, entertainers are required to pay the Club fines for rule violations. As alleged, entertainers typically pay $20 each time they violate the Club's rules. In some instances, an entertainer may walk out of the Club after working a 12-hour shift without any net earnings.

According to the Plaintiff, all of these working conditions and requirements, as well as the compensation practices, are imposed on all entertainers, regardless of the amount of time they have worked for the Club.

B

The Plaintiff asks the Court to conditionally certify a class such that she can represent those entertainers who worked at Club Cabaret any time during the past three years in a "collective action." Specifically, she argues that she is

4

"similarly situated" to the proposed members of the class because she and all proposed class members worked at a single location, under the same management structure, under the same rules, and performed the same job duties. Additionally, the Plaintiff's claims rest on a determination of whether the Defendant misclassified entertainers as independent contractors under the law. Thus, the facts, claims, and legal arguments that will be made are the same for all of the proposed class members.

The Defendant, on the other, hand, opposes conditional certification of the class. It argues that the Plaintiff and proposed class members are not similarly situated because some entertainers may have arbitration clauses in their contracts and because the complex inquiry into whether an entertainer is an employee or an independent contractor requires too much inquiry into the individual circumstances of each entertainer. Additionally, the Defendant's assertion of counterclaims against the Plaintiff alone makes this case unsuitable for a collective action.

Should the Court conditionally certify a class, the parties also dispute the content of the Proposed Notice.

### III

A Plaintiff may bring a collective action on behalf of themselves and other "similarly situated" alleged "employees" against employers who violate the FLSA's minimum wage or overtime provisions. 29 USC § 216(b). Collective actions under the FLSA are different than class actions authorized by Federal Rule of Civil Procedure 23, because in FLSA cases the plaintiff is given notice and an opportunity to *opt in,* rather than notice and an opportunity to *opt out.* 29 USC § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Woods v NY Life Ins Co,* 686 F2d 578,

579-80 (7th Cir 1982) (explaining differences between collective action under FLSA and class action certified pursuant to Rule 23). Potential class members who choose not to opt in are not bound by the Court's decision. *Jirak v Abbott Laboratories, Inc*, 566 F Supp 2d 845, 847 (ND Ill 2008), citing *Vanskike v Peters*, 974 F2d 806, 812-13 (7th Cir 1992); *Woods,* 686 F2d at 580.

  The FLSA does not, however, detail the specific procedures a court should employ when granting collective action notices. See *Smallwood v Illinois Bell Co,* 710 F Supp 2d 746, 750 (ND Ill 2010), citing *Hoffmann-La Roche, Inc v Sperling,* 493 US 165, 170-174 (1989). Nor has the Seventh Circuit done so. Id. Nevertheless, a majority of courts have adopted a uniform two-step process for determining whether an FLSA lawsuit may proceed as a collective action. *Jirak*, 566 F Supp 2d at 847 (collecting cases).

  At step one, a court decides if a class should be "conditionally" certified. See *Russell v Ill Bell Co,* 575 F Supp 2d 930, 933 (ND Ill 2008). The central question at this step is whether there are individuals "similarly situated" to the plaintiff who could be potential claimants. Id. Because certification is only "conditional" at this step, plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. Id, citing *Flores v Lifeway Foods, Inc,* 289 F Supp 2d 1042, 1045 (ND Ill 2003). To make this showing, a plaintiff cannot rely solely on the allegations contained in the Complaint unless the Defendant, in its Answer or otherwise, admits that other similarly situated persons exist. *Molina v First Line Solutions, LLC*, 566 F Supp 2d 770, 786 (ND Ill 2007). While the court need not accept the plaintiff's allegations as true as it must when considering a motion to dismiss, the court also does not consider the merits of the plaintiff's claim or make credibility determinations regarding witnesses. *Nehmelman v Penn National Gaming, Inc*, 822 F Supp 2d 745, 751 (ND Ill 2011). The plaintiff need not

supply "conclusive" support on the question, but rather need only supply "an affidavit, declaration or other support beyond allegations in order to make a minimal showing of other similarly situated [individuals] subjected to a common policy." Id.

This evidence must demonstrate a "factual nexus that binds the plaintiffs together as victims of a particular violation of the" FLSA, although "a *unified* policy, plan, or scheme . . . is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus." *Molina*, 566 F Supp 2d at 786, citing *Garza v Chicago Transit Authority*, 2001 WL 503036, *2 (ND Ill)(emphasis in original). If the court concludes that the plaintiff has met her burden at step-one, then the conditional class is certified, appropriate notice is provided to potential class members, and discovery proceeds. See *Jirak*, 566 F Supp 2d 845.

Step two occurs after the conclusion of discovery and the opt-in process is complete. Id. At this step, the court's inquiry is more "stringent" than during step one. Id, quoting *Mielke v Laidlaw Transit, Inc*, 313 F Supp 2d 759, 762 (ND Ill 2004). With the benefit of discovery, the court examines: "1) whether the plaintiffs share similar or disparate employment settings; 2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and 3) any fairness and procedural concerns." Id.

Many courts around the country have considered whether to conditionally certify a class for a collective action where exotic dancers such as the proposed Plaintiffs here have made similar FLSA claims against the owners of establishment where they worked. See *Guzman v Three Amigos SJL, Inc*, ___ F Supp 3d ___ (SD NY 2015), 2015 WL 4597427; *Geter v Galardi South Enterprises, Inc,* 2015 WL 2384068 (SD Fl); *Romero v ABCZ Corp,* 2015 WL 2069870 (SD NY);

7

*Jane Roes 1-2 v SFBSC Management, LLC*, 77 F Supp 3d 990 (ND Ca); *Kesley v Entertainment USA, Inc*, 67 F Supp 3d 1061 (D Az 2014); *Dittus v KEG, Inc*, 2014 WL 6749183 (D SC); *Coronado v DNW Houston, Inc*, 2014 WL 6674292 (SD Tx); *Espinoza v Galardi South Enterprises, Inc*, 2014 WL 5410307 (SD Fl); *McFeeley v Jackson Street Entertainment, LLC*, 47 F Supp 3d 260 (D MD 2014); *Cox v Entertainment USA of Cleveland, Inc*, 2014 WL 4302535 (ND Ohio); *Carter v Doll House II, Inc*, 69 F Supp 3d 1351 (ND Ga); *Verma v 3001 Castor, Inc*, 2014 WL 2957453 (ED Pa); *Stevenson v Great American Dream, Inc*, 2013 WL 6880921 (ND Ga); *Hughes v Burie*, 2014 WL 1572543 (ND Fl); *Hart v Rick's Cabaret International, Inc*, 967 F Supp 2d 901 (SD NY); *Cruthis v Visions*, 2013 WL 4028523 (ED Ar); *Calder v GGC-Baltimore, LLC*, 2013 WL 3441178 (D MD); *Collins v Barney's Barn, Inc,* 2013 WL 1668984 (ED Ar); *Watson v WWD, Inc,* 2013 WL 1947365 (WD La); *Jones v JGC Dallas LLC*, 2012 WL 6928101 (ND Tx); *Nesselrodte v Underground Casino & Lounge, LLC*, 2012 WL 4378163 (ND WVa); *Ruffin v Entertainment of the Eastern Panhandle*, 2012 WL 761659 (ND Wy); *D'Antuono v. C& G of Groton, Inc*, 2011 WL 5878045 (D Conn); *Clincy v. Galardi South Enterprises, Inc*, 808 F Supp 2d 1326 (ND Ga 2011); *Thompson v Linda And A, Inc,* 779 F Supp 2d 139 (DDC 2011); *Green v Plantation of Louisiana, LLC,* 2010 WL 5256354 (WD La); *In re Penthouse Executive Club Compensation Litigation*, 2010 WL 4340255 (SDNY). Of these many cases, only two declined to conditionally certify a class.

### IV

In the case at Bar, the Plaintiff has made the "modest factual showing" that she is similarly situated to the proposed class, such that the proposed class should be conditionally certified. See *Russell, 575 F Supp 2d at 933*. First, the Plaintiff and members of the proposed class all work or have worked at a single location owned and operated by the Defendant. Second, the submitted declarations and accompanying "Independent Contractor Agreements" are

8

sufficient to establish that the proposed class members were all subject to the same working conditions as set forth, *supra*, and as alleged in the Complaint. Stated simply, all proposed class members worked at the same place, for the same Defendant, and under the same conditions. If these class members are not similarly situated, it is hard to imagine that a class could ever be conditionally certified, which may also explain why classes were conditionally certified in twenty-five of the twenty-seven cases cited, *supra*. This weight of authority in favor of conditional class certification in this context may explain why the Defendant cites not a single federal case where exotic dancers make claims similar to those of the Plaintiff here.

Regarding the specific arguments the Defendant makes, it first posits, without any argument, that its assertion of counterclaims is enough to defeat class certification. However, classes are routinely conditionally certified in cases similar to this one where counterclaims are asserted. See for example, *Hart*, 967 F Supp 2d at 901; *McFeeley*, 47 F Supp 3d at 260; *Ruffin*, 2012 WL 761659. Moreover, the two cases cited by the Defendant are inapposite. Both *George v Beneficial Finance Co of Dallas,* 81 FRD 4 (ND Tex), and *Buford v H & R Block, Inc,* 168 FRD 340 (SD Ga) are neither FLSA cases nor collective actions; these are cases involving class certification under Federal Rule of Federal of Civil Procedure 23. The "argument," assuming it can even be characterized as such, is specious.

Next, the Defendant argues that some entertainers have entered into arbitration agreements with them which would exclude them from a collective action. Again, the two cases cited by the Defendant are inapposite. *Carter v Countrywide Credit Industries, Inc*, 362 F3d 294 (5th Cir 2004) is about the validity and enforceability of arbitration agreements under the Federal Arbitration Act, not about whether an agreement to arbitrate for some proposed class members would defeat conditional certification of a class. Moreover, although the court in

9

*Carter* did compel some class members to arbitrate, it still conditionally certified a class in that case notwithstanding the arbitration clauses. See https://ecf.txnd.uscourts.gov/doc1/17712189344. Although *Odem v Centex Homes*, 2010 WL 424216 (ND Tex) is at least a case considering the question of conditionally certifying a class under the FLSA, the existence of arbitration clauses for some potential class members in that case was one of only a myriad of reasons why the court concluded a class should not be certified.

Most importantly on this issue, the lone agreement containing an arbitration clause submitted by Defendant to support its position that "entertainers" may have arbitration clauses was executed well *after* this cause of action was filed. This suit was filed on May 26, 2015; the agreement with the arbitration agreement submitted by the Defendant is dated July 30, 2015. A defendant's attempt to impose an arbitration requirement on potential plaintiffs *after* suit was filed has been found, in very similar circumstances, to be unenforceable and designed to unfairly thwart potential opt-in plaintiffs' rights under the FLSA. *Carter*, 69 F Supp at 1358. The Court does not here make such a finding in this case but, at the very least, the suspicious timing of the example submitted by the Defendant is not enough to defeat conditional certification of a class. Moreover, any issues related to opt-in plaintiffs with arbitration agreements can be addressed at step-two of the class certification process, where the number, timing, and circumstances surrounding such clauses can be most appropriately addressed after discovery is concluded.

Finally, the Defendant claims that this Court cannot conditionally certify a class because it must conduct a "case-by-case" analysis on this "complex and fact-intensive inquiry" concerning whether the dancers are employees or independent contractors. (D. 30 at ECF p. 7-8). However, the Court is not deciding the merits of this case when considering the class certification question.

10

*Nehmelman*, 822 F Supp 2d at 751. The Plaintiff here has more than met its "modest" burden of coming forward with enough evidence to establish a similar situation among class members. The Defendant will, of course, have an opportunity to seek decertification of the class at the conclusion of discovery, at which time such arguments are more properly made.

Accordingly, the Court conditionally certifies the following class:

All persons who work(ed) as entertainers for Defendant, Club Cabaret, Inc. at any time within three years of the filing of the Complaint in this case, May 26, 2012.

## V
### A

Having conditionally certified a class, the Court must now determine what the proper means is to provide notice to potential opt-in plaintiffs. The Plaintiff has submitted a Proposed Notice, a proposed consent opt-in form, and a proposed letter to potential plaintiffs. (D. 24-6 at ECF p. 2-5; D. 24-7 at ECF p. 2). The Defendant raises a number of objections to the Plaintiff's Proposed Notice.

First, the Defendant argues that the notice "must" clearly state any counterclaims. (D. 30 at ECF pp. 8-9). This assertion misstates the law, as even the cases cited by the Defendant do not *require* such notice. Moreover, some courts "have generally disapproved of including language indicating . . . the possible costs of litigation given the remote possibility that such costs absent class members would be other than de minimis, as well as the risk of an *in terrorem* effect that is disproportionate to the actual likelihood of significant costs." *Romero*, 2015 WL 2069870 at *4. Indeed, the court in *Romero* rejected the precise argument the Defendant makes here. Id. This Court rejectes it as well for the same reasons.

Second, the Defendant argues that notice is premature. (D. 30 at ECF pp. 9-10). The Defendant argues that there is an issue regarding whether the statute

11

of limitations stretches back two or three years. However, the Defendant fails to direct the Court to a single authority finding notice inappropriate because such a question remained unanswered. Moreover, at least some courts have held that if there is a dispute between the two or three statute of limitations period, courts *should* proceed with notice and use the 3-year period during the conditional certification stage. *Ritz v Mike Rory Corp*, 2013 WL 1799974, *4 (ED NY 2013). Accordingly, the Court rejects this argument.

Third, the Defendant claims a 90-day notice period is too lengthy and proposes 45 days instead. (D. 30 at ECF p. 10). District courts have broad discretion regarding the details of a notice sent to potential opt-in plaintiffs, including the length of time for the opt-in period. See for example, *Butler v DirectSAT USA, LLC*, 876 F Supp 2d 560, 574 (D Md 2012). Courts routinely approve a 90-day opt-in period, and the Defendant provides no good reasons not to do so here. See Id (collecting cases from around the country approving a 90-day opt-in period).

Fourth, the Defendant argues that the notice confusingly requires that proposed opt-ins send consent forms to Plaintiff's counsel, rather than the Clerk of the Court. (D. 30 at ECF p. 10). Courts are split on the issue of whether such notices should go to the Clerk of the Court or Plaintiff's counsel. See *Romero*, 2015 WL 2069870 at *4; *Ritz*, 2013 WL 1799974 at *4. This Court agrees with the courts in *Romero* and *Ritz* that it is appropriate to allow the return of opt-in consent forms to Plaintiff's counsel in order to "minimize the burden on opt-in plaintiffs who choose representation by plaintiff's counsel and to reduce the administrative burden on the court." Id.

Fifth, the Defendant argues that the Court should order the Defendant to produce the names and addresses of the putative class to a third-party administrator to issue the notice in order to protect the privacy interests of the

potential plaintiffs. According to the Defendant, "Dancers, and particularly women who have left the profession, may not desire a mailed notice arriving at their doorstep that could be opened or even seen by a boyfriend, husband, parent, or even child, who may have absolutely no knowledge that the individual had ever performed as an exotic dancer in the past." (D. 30 at ECF p. 11). The Defendant fails to explain how receipt of a notice from a third-party administrator as opposed to Plaintiff's counsel in any way addresses this concern. If such a danger exists, it exists whether the notice comes from the Clerk of the Court, Plaintiff's counsel, or a third party administrator. Accordingly, the Court rejects this argument as well.

Finally, the Defendant argues that the Court should restrict the use of contact information for potential plaintiffs as follows: "(1) [R]estricting use of the disclosed addresses for the sole purpose of sending notice of this litigation only; (2) restrict communications with potential opt-ins to issuance of an approved notice by U.S. mail; and (3) restrict Plaintiff's counsel's subsequent written communications with potential opt-in class members. The Court agrees that such restrictions are appropriate to the extent that such communications *originate* from Plaintiff's counsel; such communications should be in the form and manner approved by this Court in this Order. That manner, however, includes communication by email, as requested by Plaintiff's counsel. Defendant has nowhere argued that communication by email, in addition to US mail, is inappropriate. Moreover, should a potential plaintiff contact Plaintiff's counsel after receiving notice of this suit, Plaintiff's counsel may appropriately communicate with potential plaintiffs in whatever form most expedient.

**B**

Although the Defendant does not make a specific challenge to the type of information it must produce to assist Plaintiff's counsel in identifying potential

13

plaintiffs, the Court *sua sponte* finds that the scope of information Plaintiff's counsel seeks from the Defendant needs to be appropriately limited. Specifically, Plaintiff's counsel seeks from the Defendant a list of all entertainers employed by the Defendant during the last three years which includes: "(1) name, (2) mailing address, (3) email address, (4) telephone number, (5) dates of employment, (6) date of birth, and (7) last four digits of their social security number." (D. 23 at ECF p. 15).

The purpose of the provisioning such information to Plaintiff's counsel is to assist them in identifying potential plaintiffs. Obviously, a list of names, last known addresses, dates of employment, and email addresses are necessary to do so. However, given that Plaintiff's counsel is limited to contacting potential class members via US mail or email, there is no need for the telephone number of potential plaintiffs. Likewise, dates of birth and the last four digits of social security numbers would be of marginal use in locating potential plaintiffs and, whatever that marginal use might be, it is substantially outweighed by the privacy concerns of potential plaintiffs.

Secondly, although again not raised by the Defendant, the Court concludes that a follow-up letter sent 45 days into the opt-in period is unnecessary. Fifteen individuals have already opted into this suit. There is no reason to believe that the posting, mailing, and emailing of the approved notice in this case would need to be resent to potential plaintiffs; once a potential plaintiff receives notice, their options and deadlines are clear. No follow-up notice is required or appropriate.

## C

After the Plaintiff filed her motion to conditionally certify a class and the Defendant filed its response, the Plaintiff filed a Motion for Declaration of Contract Void Ab Initio, Emergency Cease and Desist Order, and Related Relief.

14

(D. 39). That motion and its accompanying filings assert that the Defendant is attempting to interfere with potential plaintiffs' rights to participate in this lawsuit, including enticing or coercing individuals to sign a "Mutual Release of All Claims" which purports to relieve the Defendant of liability in this case in exchange for a waiver of "rent" charges for 30 days. (D. 41-9 at ECF p. 2). Accordingly, the Plaintiff asks that the Proposed Notice include a reference to these releases, as well as several other forms of release.

Because this Court cannot determine what, if any, reference the Notice should contain as it relates to the issues surrounding the Defendant's alleged communications with potential plaintiffs, the Court cannot allow the Notice to be issued until an evidentiary hearing is held and a final decision is made on the issues raised in the Plaintiff's motion. Accordingly, the Court stays issuance of the Notice until the Court rules on the Plaintiff's Motion for Declaration of Contract Void Ab Initio, Emergency Cease and Desist Order, and Related Relief. (D. 39). The Court will decide at a later time whether the statute of limitations should be equitably tolled from the date of this order until appropriate Notice can issue.

## VI

For the foregoing reasons, the Court GRANTS the Plaintiff's motion and orders as follows:

1. The following class is conditionally certified: "All persons who work(ed) as entertainers for Defendant, Club Cabaret, Inc. at any time within three years of the filing of the Complaint in this case, May 26, 2012."
2. The Defendant shall produce to Plaintiff's counsel on or before October 5, 2015 a list of all dancers who worked at the club, for whatever length of time they worked there, from May 26, 2012 to the present.  Such list shall

include each dancer's: 1) name; 2) last known address; and 3) last known email address.

3. The issuance of Notice is STAYED until this Court rules on Plaintiff's Motion for Declaration of Contract Void Ab Initio, Emergency Cease and Desist Order, and Related Relief. (D. 39).

*It is so ordered.*

Entered on September 28, 2015

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE