**E-FILED**
Wednesday, 09 March, 2016  01:31:43 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 1

LAW OFFICES
SHAFER & ASSOCIATES, P.C.
A PROFESSIONAL CORPORATION
3800 CAPITAL CITY BLVD., SUITE 2
LANSING, MI 48906
E-MAIL info@bradshaferlaw.com
PHONE: 517-886-6560
FAX: 517-886-6565

BRADLEY J. SHAFER
ALSO MEMBER, AZ BAR
Brad@bradshaferlaw.com

MATTHEW J. HOFFER
Matt@bradshaferlaw.com

## CONFIDENTIAL MEDIATION SUMMARY
**THIS DOCUMENT, THE ATTACHED, EXHIBITS AND OTHER ENCLOSED AND REFERENCED DOCUMENTS ARE PRIVATE AND CONFIDENTIAL FOR MEDIATION AND SETTLEMENT PURPOSES ONLY AND FULLY PROTECTED BY FRE 408**

March 4, 2016

VIA E-MAIL TRANSMISSION TO:

Hon. Morton Denlow
71 Wacker Drive, Suite 3090
Chicago, IL  60606
mortdenlow@gmail.com
dstewart@jamsadr.com

Paul J. Lucas
lukas@nka.com
Brittany Bachman Skemp
bbachmanskemp@nka.com
NICHOLS KASTER
4600 IDS Center, 80 S. 8th St.
Minneapolis, MN  55402

> Re:    *Defendants' Mediation Statement*
>        *Aleigha Woods v. Club Cabaret, Inc. et al., C.D. Ill. Case No. 1:15-cv-1213*

Dear Judge Denlow:

---

Personal comments by defense counsel Bradley J. Shafer:

Regrettably, because of a long-standing commitment, I will be unable to personally attend the mediation in this matter.  Rather, the interests of the Defendants will be represented by Matthew Hoffer from my office and Sam Zabek.  Because, however, I've represented more exotic dance clubs in these types of actions than any other attorney in the country, I'd like to provide to you some personal comments on the matters at hand.  Please note that I have not vetted these comments by my brother counsels or by the clients.  They have no idea that I am making these statements.  These comments and mine, and mine alone.

Since, 1988, my practice has almost exclusively involved the representation of gentlemen's clubs and other "adult" businesses.  A large part of this practice, at different times over this career, has been devoted to the business classification of exotic dancers.   These have

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 2
_____

involved, for example, claims under federal wage laws, state wage laws, EEOC, federal tax laws, state tax laws, worker's compensation, and unemployment compensation claims.  To date (and not counting matters that are currently in litigation), I've won every classification case with the exception of my first claim (unemployment), where I just didn't know what I was doing.  I've ever won multiple matters in California, which is clearly the most "liberal" state in finding workers to be employees.

While, of course, that is no guarantee of future success, my experiences provide to me certain insight to these types of claims not possessed by many other attorneys (or judges, or mediators).  And, the confidential nature of these types of mediation summaries affords the ability to provide truthful comments with a tad bit more candor than would be possible in an open litigation venue (as an Eagle Scout and a Scout leader, having the ability to actually discuss these sensitive matters *truthfully*, which is, of course, not necessarily possibly in a court of law is quite refreshing, and indeed liberating).

In my experience in representing these types of clubs since 1985, this is what I have found (and what the evidence at trial in this matter will show).

Dancers do not want to be employees.  Usually, they only file these types of actions *after* they leave a club because, for the reasons I discuss below, they would not work as an employee. Dancers do not want to perform as employees for basically three reasons.

First, in general, they do not file tax returns or pay taxes on the income they generate while performing in these types of clubs.  *Basically, they defraud the IRS.*  Then, after doing so and after obtaining monies under an independent contractor structure that would *undeniably* belong to the club if the dancers had been working as employees (under both the IRC and the FLSA; as discussed in detail below), they file these types of suits looking for free money.  And, they settle these cases as 1099 payments, instead of W-2 wages, so that their tax liabilities are minimized.

Second, if dancers were employees, most of them would still not be paid by the clubs.  Rather, they would receive a "zero" paycheck.  This is because under the IRC, withholdings are made from *wages* with regard to *both* the taxes that are due on the wages themselves *and* that are due on the *tip income as well*.  For highly tipped employees, such as successful bartenders and waitresses, this means that the deductions *actually exceed* the wages to be paid.  Hence, they get, at the end of a pay period, a "zero" paycheck, and to the extent that the wages do not fully satisfy all of the withholdings due on the wages and tip income, the employee then has to pay such additional taxes at the end of the year.  In fact, I actually represent some clubs where the dancers *are employees*, and the dancers, with few exceptions, *really do* get "zero" paychecks at the end of the pay period and the IRS has repeatedly verified the propriety of this.

These accounting and tax law realities are not in dispute.  I have the best, most experienced, CPA's in the business, who have worked together with the IRS for years on all of these issues and who will fully testify to all of this.  However these are not principles generally understood by dancers or even by the lawyers who file wage suits on their behalf (and Mr. Lucas's mediation summary *completely ignores* this reality).

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 3
_____

In a national dancer class action suit I handled a number of years ago, we actually offered to convert the dancers to employees and I admonished plaintiffs' counsel that I was depending on *him* to explain to *his clients* that they would probably get a "zero" paycheck at the end of the day (under the old adage:  Be careful what you ask for.  You just might get it).  He was totally clueless as to what I was talking about and the IRC provisions involved here, and asked me to actually explain it to him.

Regardless of whether Mr. Lucas understands these tax realities or whether he has explained them to his clients (you are free to flesh those issues out at mediation), the fact remains that as long as I am counsel for the Defendants, no payment by way of *judgment* or settlement is going to violate, *in the least*, the provisions of the IRC.

I should also point out that the legal obligation under the IRC of dancers to report *all* of their tip income to the club in which they performed -- if they worked as employees -- is a critical reason (that will come out at trial) of why clubs are not quick to treat the type of women who would perform as exotic dancers as employees.  It turns out that when an *employee* violates his or her obligation under the IRC to report ALL of his or her tip income to his or her employer, the *business* can be held liable for FICA and FUTA taxes due on the employee's unreported or underreported tip income.  *See United States v. Fior D'Italia, Inc.,* 536 U.S. 238 (2002).  Simply put, clubs are very concerned that the type of women who perform as exotic dancers – women who do not like rules or to be told what to do – will simply not report all of their tip income; thereby creating legal exposure for the business.

The third reason that dancers don't want to be employees is, as I've alluded to above, they are not the type of women who want to submit to the types of controls exercised over *real* employees.  I was in a dancer trial once and the plaintiffs' attorney was complaining to me about his inability to control his clients enough to even get them to show up for trial when he needed them.  My response:  "And your point is?"  He saw the humor.

You may, nevertheless, then be asking yourself, in light of all the dancer litigation going on around the country:   "What evidence does Mr. Shafer have that dancers don't want to be employees?"  Good question.  I have equally good answers.
First, many clubs, including Club Cabaret (following the filing of this suit), provide dancers the choice, in writing, of performing as employees or as independent contractors.  Dancer applicants *virtually never choose employee status* (the few in my career who did asked to change to an IC within days after seeing what they had to do as a *real* employee and the benefits to them of performing as an IC).

Second, in the few instances where dancers sued while they still performed at the club in question, the clients moved to convert them to employees in order to mitigate their damages and to also give the dancers *exactly* what they sought by way of their suits (to be treated as an employee).  A logical person would think that the dancers and their attorneys would have *jumped at that prospect*.  Nevertheless, in each such instance the dancers had their lawyers' file *emergency motions for restraining orders* to preclude the clubs from converting the dancers to

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 4
_____

employees (all were unsuccessful).  I don't pretend to understand that, but maybe Mr. Lucas can explain that one to you at the mediation.

Third, are the numerous settlements around the country in dancer classification cases that bear out my statement.  With one single solitary exception (that I will discuss in the paragraph immediately below), *none of those settlements resulted in the dancers being converted to employees.*   Again, perhaps Mr. Lucas can explain that one to you at the mediation (hopefully, it's not "I'm a better attorney"; these cases have been handled by some of the largest and most prominent class action firms in the country).  Nevertheless, the dancers weren't converted to employees in these settlements because if they had been, the dancers who still performed at the clubs in question would have completely revolted against such a restructuring.

Which leads me to, fourth, the national "*Spearmint Rhino*" chain class action settlement.  In that case, all counsels agreed to settle the matter by permitting the clubs to continue to treat the dancers as IC's.  The federal judge, however, balked and wanted them converted to employees.  Ultimately, a settlement agreement was reached (acceptable to the judge) where the dancers could be converted to *either* employees of "*co-owners.*"

The clubs first tried the employee route.  Dancers left the clubs *in droves* (going to perform, rather, at competing clubs where they could remain as IC's).  They then went to the "co-owner" approach that is little different from what Club Cabaret uses.

I'd like Mr. Lucas to show me (and you) dancers who actually *want* to work under an employment arrangement.

And, before moving on, I'd also like to compliment Mr. Lucas on the brilliant media campaign he has waged.  Everyone now knows about this suit; everyone is talking about how the dancers are going to "clean up"; and everyone now believes that -- as a result – Club Cabaret will be going out of business.  Consequently, dancers are leaving in droves and going to other clubs,[1] customers are staying away, the revenue stream of the club has been *significantly* curtailed, and the club's ability to pay any settlement has -- as a consequent result -- been significantly diminished.

Way to go Paul in looking out for the best interests of your clients!!!!

This then leads me to the tax ramifications at issue in this matter.

In discovery in these types of cases, we are able to get the tax returns of the dancers (even from the "absent" class members of a Rule 23 class), since they are directly relevant to a variety of the legal matters at issue; liability *and* damages.  They are relevant to *liability* because the Supreme Court has clearly found that the way that the parties categorize their relationship for tax purposes is a relevant factor to determining employee status.  *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989).

_____

[1]   My other clients who run clubs where the dancers have gone to perform as independent contractors wish to express their gratitude to Mr. Lucas.

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 5
_____

For example, when a dancer signs, *under penalty of perjury*, a Schedule C (profit and loss from business), where she takes deductions that she could not have legally taken as an employee, that's relevant to the legal status of the dancer, and the Supreme Court has held as such. Such information is also relevant, as I discuss in greater detail below, to how much, *and even whether*, the defendants can *net* pay *anything* to dancers out of any resulting judgment as a result of the deductions that have to be made in regard to not only the wage payments themselves, but to the *tip income* the dancers earned while performing at the club.

But in my experience in these types of wage cases, we find, as I discussed above, that the general rule is that dancers do not, in fact, file tax returns (or pay taxes) in regard to the income they earn while performing at these types of clubs.[2] Those few who do file, file a Schedule C. In all of my experience in defending these types of suits, I have only found *one single dancer* who filed a tax return consistent with employee status, and she had her tax return prepared by the IRS.

In addition, I was involved in the IRS's first nationwide attempt to go after the clubs in regard to the income earned by the dancers. The IRS contended that the dancers were employees, and that the income earned by them was taxable to the clubs. The IRS initiated those proceedings because they had audited certain clubs and had cross-checked the identities of the dancers against those who had filed tax returns. In short, the IRS found that only a very small minority actually filed tax returns or paid taxes on the income they earned at these clubs. This is the dirty little secret of the industry. Rather than, however, going after hundreds or thousands of dancers, the IRS decided, instead, to go after the clubs.

Unfortunately for the IRS, we were successful in winning every such case, and in fact obtained numerous monetary awards back against the IRS for taking positions that the federal courts concluded were "not substantially justified" (the legal standard for awarding costs and attorney fees against the government). Those wins do not, of course, in any way help the *dancers* who have failed to pay taxes on the income *they* earned.

More importantly, however, those cases allowed me to gain a detailed understanding of the application of the tax laws to these types of wage claims; knowledge that is simply not possessed by other labor "defense" attorneys who handle these types of strip club wage cases. As such, there are tax matters that I can bring to bear to favor my clients in these types of case that are simply not known by other attorneys.

True to the statements I've made above, the Defendants have requested the tax returns (among other things) form each and every opt-in Plaintiff. To date, *not a single Plaintiff has produced her tax returns.* If each specific dancer does not produce her tax return in order to verify that she has paid taxes on all income she earned while performing at Club Cabaret, an in particular the tip income she received, Club Cabaret is legally precluded from paying such

---

[2]    We also seek disclosure of any applications that the dancers have made for governmental benefits, such as "Welfare," and often find that they have defrauded the government in such applications by claiming that, for example, they earned no income during a period when they actually performed as non-employee exotic dancers.

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 6
_____

plaintiff anything by way of judgment or by way of W-2 settlement until all tax matters are fully resolved  That's just the law (as the club's accountants will attest), and the reason why these cases settle as 1099 payments instead of as W-2 wages.

Nevertheless, I am going to assume, based on prior experience and the lack of response to our discovery requests, that many of Mr. Lucas' clients have not in fact filed tax returns, or paid taxes, for the years that they performed at Club Cabaret.
This then leads me to this action and this mediation.

Rather than spending time the past few days with our family 9 ½ year old Golden Retriever as he was dying of a horribly debilitating disease (although the one day extension allowed me to witness his last breath on this planet), or trying to console my wife who has raised him since he was a 7 week old puppy, I had to, rather, deal with this bull shit.
So here is my solemn vow, oath and promise.

If you all do not resolve this at mediation, for all of Mr. Lucas' clients who will not provide documentation establishing that they have paid taxes on all of the income they earned while performing at Club Cabaret, including tips, I'm going to *legally* FUCK them so far up their ASSES with the IRS that my DICK is going to come out of their NOSES.[3]  And, by turning in Mr. Lucas' clients, my clients can get 15% of the taxes owed as a finder's fee under IRS regulations.  It's a "two'fer" for us!

Least anyone question my sincerity on this point, or believe that I am just posturing for mediation, let me tell you that I've already started to do this.

Florida has an interesting stage wage law.  Before you can file suit, the plaintiff has to submit, in writing, a demand for wages that specifies the amount claimed, and provides the defendant 15 days to pay the amount.  If it's paid, the matter is over.  If it's not, the suit can be filed.

A couple of attorneys in Florida decided to get on the strip club gravy train, and submitted such a written demand.  To their surprise, my client decided to pay, but I responded with demands that the plaintiffs submit their Social Security numbers; an accounting of the tip income they earned while performing so that appropriate deductions could be made from the wage payments if necessary (*i.e*., if the dancers had *not* already paid these taxes); and verification that they *had* paid taxes on the income (including tips) they earned from performing at that club.  I explained to their counsel that until we received that information, we were legally precluded from remitting any monies to their clients because the statute would require W-2 wage payments (form which all legally necessary deductions must be made).

_____
[3]  By these comments, I do not in any way state, imply, or intimate that I am threatening any type of criminal action, as that is not my intention and to do so, of course, would be a violation of the rules of professional responsibility.  Rather, I'm just going to use the *civil* provisions of the IRS to the fullest extent to legally benefit my clients.

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 7
_____

The attorneys thought I was bluffing and did not respond.  As a result, we filed an interpleader action where we named both the plaintiffs *and the IRS* as defendants.
Boy, do those dancers now have the IRS up *their* asses![4]

Plaintiffs' counsel can certainly mitigate my comments above and below by doing two things.  First, he can bring to the mediation his clients' (and I mean *all* of his clients) *certified* tax returns (I often get "draft" tax returns in discovery, years late, as to what the dancers claim they are "*going*" to file) to prove that his clients have paid taxes on all of their income generated while performing at Club Cabaret (and in particular on their tip income).  Second, he can bring to the mediation dancers who *currently perform* at Club Cabaret who will tell you they really *want* to perform as *employees* (even, if, because of the IRC, they may get "zero" paychecks because of the withholding requirements regarding tip income).

I don't think that either will happen.

I'm done with the charade that is these dancer suits.  Paul:  You want to go scorched earth?  Let's go scorched mother fuckin earth.   You want to dance, you and I?  I'll lead.

End of personal comments.
_____

This letter will serve as the mediation statement on behalf of all Defendants to the above referenced lawsuit.   Plaintiffs will not win on their claims of liability, the Defendants' counterclaims have been substantiated in other litigation, and the Plaintiffs' command is nothing short of outrageous.



_____
[4] I am hoping to be able to represent those dancers in their malpractice action against their lawyers.

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 8

_____

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 9

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 10

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 11

_____

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 12

_____

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 13

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 14

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 15

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 16

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 17

_____

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 18

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 19

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 20

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 21

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 22

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 23

_____

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 24

_____

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 25

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 26
_____



FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 27

_____

Sincerely,

**SHAFER & ASSOCIATES, P.C.**

FRE 408 PROTECTED
CONFIDENTIAL MEDIATION SUMMARY
Page 28
_____

                                      s/ Bradley J. Shafer
                        By:    Bradley J. Shafer

crh/BJS
Enclosures

Cc:    Sam Zabek (szabek@glo-pc.com)
         Matt Hoffer (Matt@BradShaferLaw.com)
         Joseph Napoli