IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ALEIGHA WOODS, individually and on
behalf of others similarly situated and the
Illinois Rule 23 Class,

        Plaintiffs,

v.

CLUB CABARET, INC., and JOSEPH
MILLER in his individual capacity,

        Defendants.

Case No. 1:15-cv-01213-JEH

## Order

Before the Court is the parties' joint motion for preliminary approval of a $1,000,000 class and collective-action settlement on behalf of approximately 106 individuals who worked as entertainers at Club Cabaret from May 26, 2012 to October 15, 2015. (ECF No. 115.) As set forth, *infra,* because the Court finds that the settlement provides considerable value for individuals with difficult claims, provides for prompt and certain payment, and avoids the need for drawn out litigation, the motion is GRANTED.

## I
## A

This hybrid class and collective action was filed on May 26, 2015. (*See* Compl., ECF No. 1.) Plaintiff asserted claims under the Fair Labor Standards Act ("FLSA") as well as Illinois state wage and hour laws. (*Id.*) Plaintiff worked as an entertainer for Defendants. She alleged that Defendants misclassified her and other entertainers as independent contractors, rather than employees, and denied them of legally entitled wages free and clear of unlawful kickbacks. (*Id.*)

Defendant Club Cabaret, Inc. ("Club Cabaret") filed an Answer on July 31, 2015, denying all liability and asserting numerous counterclaims against Plaintiff and the putative class members. (ECF No. 20.) Club Cabaret contended that Plaintiff's wages should be offset by monies received from customers, and that the fines and fees Plaintiff paid do not qualify as minimum-wage damages. (*Id.*) On December 9, 2015, Plaintiff filed her Motion to Amend the Complaint to add Joseph Miller, the owner and president of Club Cabaret, as an individual Defendant. (ECF No. 66.) Defendant did not oppose the motion. (ECF No. 76.)

On August 7, 2015, Plaintiff filed her Motion for FLSA Conditional Collective-Action Certification and Judicial Notice. (ECF No. 23.) This Court granted conditional certification, and ordered Defendant to produce a list of all entertainers who worked at Club Cabaret since May 26, 2012. (ECF No. 44.) In compliance with that Order, on October 5, 2015, Defendant produced a list of eighty two (82) individuals it identified as putative FLSA Collective Members ("2015 Class List"), who had not already submitted consent-to-join forms in this Action. On October 15, 2015, judicial notice was mailed to individuals identified on Defendant's 2015 Class List. A total of forty one (41) Plaintiffs asserted their wage claims under the FLSA by filing consent-to-join forms with the Court. (*See* ECF Nos. 4, 7, 11, 12, 13, 14, 15, 17, 18, 19, 25, 26, 31, 36, 37, 43, 52, 53, 54, 55, 58, 59, 60, 61, 62, 64, 71, 72, 73, 74 and 80.)

On December 9, 2015, Plaintiff filed her Motion for Rule 23 Class Certification. (ECF No. 66.) Defendant did not oppose the motion, and on January 25, 2016 the Court granted the motion in full and certified this matter as a class action pursuant to Fed. R. Civ. P. 23. (ECF No. 76.) The Court further ordered that all issues relating to class notice under Fed. R. Civ. P. 23(c)(2)(B) and (e)(1) be addressed after the parties participated in mediation. (ECF No. 76, ¶ 5.)

The parties conducted substantial discovery. Plaintiff took the 30(b)(6) deposition of Defendant's corporate representative, Joseph Miller, and the parties exchanged written discovery and documents. (Declaration of Brittany B. Skemp ("Skemp Decl.") ¶ 2.) Additionally, Plaintiffs' Counsel interviewed the Opt-ins to understand their hours

worked, the fines and fees they paid to Defendant, and both sides' claims and defenses. (*Id.*)

The parties participated in two mediation sessions with the Honorable Morton Denlow, which occurred on March 8, 2016 and September 8, 2016. (Skemp Decl. ¶ 3.) The parties did not resolve their dispute at either mediation. (*Id.*) On October 21, 2016, after it appeared the parties would not be able to resolve this matter, Plaintiff filed her Motion for Approval of Fed. R. Civ. P. 23 Class Action Notice. (ECF No. 97.) Defendants produced a revised Class List to Plaintiffs' Counsel (the "2016 Class List"). (Skemp Decl. ¶ 4.) The 2016 Class List identified 75 additional entertainers who were not included on Defendant's 2015 Class List. (*Id.*) These 75 entertainers started working for Defendants after FLSA Judicial Notice was distributed. (*Id.*) On October 21, 2016, Plaintiffs' Counsel distributed Rule 23 Notice to those identified in Defendant's 2015 and 2016 Class Lists. (*Id.* ¶ 5.)

On March 27, 2017, after extensive arms-length negotiations, the parties reached an agreement to resolve the case, subject to Court approval. (*Id.* ¶ 6.) Thereafter, the parties prepared and signed a final settlement agreement on May 12, 2017. (*Id.*; *see also* Ex. A, Settlement Agreement (the "Agreement").) Counsel for the parties at all times vigorously pursued their respective positions and the rights of their clients throughout the negotiations, engaged in extended legal and factual analysis, discovery, damages analysis, and good faith, arms-length negotiations regarding settlement. (Skemp Decl. ¶ 6.)

**B**
**1**

The general structure and terms of the settlement are relatively straightforward. Assuming preliminary approval, notice would be distributed to all Opt-in Plaintiffs and entertainers who worked at Club Cabaret from May 26, 2012 to October 5, 2015 ("Eligible Rule 23 Claimants"). (*See* Agreement § 5.) These individuals would be given 45 days to submit a claim form accepting Defendants' settlement offer. (*Id.* § 1.19.) Those who submit a claim form (collectively, "Settling Plaintiffs") would then receive their allocation

following final approval. (*Id.* § 5.4.) Those who did not submit a claim form would be excluded from the settlement and the money that was previously allocated to them would be redistributed to the Settling Plaintiffs on a pro rata basis. (*Id.* §§ 9.3-9.5.) Several terms are explained in more detail:

    a.    <u>Settlement Amount</u>. Defendants will pay a total settlement amount of $1,000,000, which includes settlement payments to all Settling Plaintiffs and attorneys' fees and costs. This amount excludes employer-side payroll taxes and payroll administration expenses Defendants may incur (if any) in their efforts to effectuate this Settlement. Defendants shall be separately responsible for those taxes and expenses. (*Id.* § 3.)

    b.    <u>Scope of the Settlement Class</u>. This settlement includes all Opt-in Plaintiffs who have filed consent to join forms and the Eligible Rule 23 Claimants, who are individuals that worked at Club Cabaret as entertainers from May 26, 2012 to October 5, 2015. The parties agree that the scope of the settlement class is proper. On or around October 5, 2015, Defendants changed a number of their policies and practices which could affect the claims brought in this lawsuit. Moreover, the release of claims will only be for the time period identified above. (*Id.* § 4.)

    c.    <u>Allocation and Settlement Offers</u>. In consultation with Defendants' Counsel, Plaintiffs' Counsel provided a reasonable preliminary allocation of the settlement amounts for Plaintiffs. These amounts have been adopted by Defendants as their individual settlement offers to each Plaintiff, and are set out in Exhibit B. This allocation was calculated by using information from the Opt-in Plaintiffs. (Agreement § 3.) The allocation is described in more detail below.

    d.    <u>Settlement Administration</u>. Plaintiffs' Counsel will distribute settlement payments to the Settling Plaintiffs. The Settling Plaintiffs' settlement payments shall be reported by Defendants for tax purposes on an IRS Form 1099-MISC for each Settling Plaintiff. Defendants are responsible for providing Plaintiffs' Counsel with the Settling Plaintiffs' 1099-MISC Forms. (*Id.* § 6.2.)

    e.    <u>Non-Reversionary Settlement</u>. The entire settlement amount is non-reversionary. If any Opt-in Plaintiff or Eligible Rule 23 Claimant rejects their offer or does not submit a claim form, amounts allocated to those individuals will not revert to Defendants, but will be reallocated to the participating Settling Plaintiffs. (*Id.* §§ 7.4, 9.3-9.5.) If checks remain

uncashed after 90 days, those amounts will be donated to Illinois Legal Aid as a *cy pres* recipient. (*Id.* § 6.6.)

f.    <u>Release</u>. The release is tailored to the claims at issue in the case. Opt-in Plaintiffs who submit a claim form will give up their FLSA and Illinois state-law claims related to their work as an entertainer from May 26, 2012 through October 5, 2015. Eligible Rule 23 Claimants who submit a claim form will give up their Illinois state wage-and-hour claims related to their work as an entertainer from     May 26, 2012 through October 5, 2015.

**2**

After a deduction for attorneys' fees (25%)[1], litigation costs in the amount of $29,258.28, and $6,000 in Service Awards, the settlement will allocate around $714,741.72 to 106 individuals, which results in average damages in the amount of $8,817.36 for the FLSA Opt-in Plaintiffs and $5,434.31 for the Eligible Claimants. (Skemp Decl. ¶ 7.) Further, the settlement is fully non-reversionary. If individuals choose not to participate in the settlement, their funds will be re-allocated to those who do wish to participate. Even if FLSA Opt-in Plaintiffs reject their share of the settlement—meaning their claims would be dismissed without prejudice and they would be able to pursue a new action against Defendants—the full settlement amount will be paid out to Settling Plaintiffs and will not revert to Defendants. (Agreement § 9.3.)

Defendants did not maintain any records of Plaintiffs' dates of employment, days or hours worked, or the fines and fees Plaintiffs paid to work. (Skemp Decl. ¶ 8.) As a result, Plaintiffs' Counsel used multiple sources of information to calculate damages. To determine the number of hours and shifts worked per week and the amount of fines and fees paid to Defendants, Plaintiffs interviewed the Opt-In Plaintiffs and reviewed any available receipts Plaintiffs had in their possession. (*Id.*) After review of the estimates and receipts provided by the Opt-in Plaintiffs, an amount of $55 in house fees was assigned per shift worked. Because fines were sporadic to non-existent for many Plaintiffs, $10 per week was included for fines. (*Id.* ¶ 9.) The Opt-in Plaintiffs' dates of employment were

---

[1] Plaintiffs' Counsel has a one-third contingency agreement with their clients, but only seek 25% for this Settlement.

derived from the sources above and each Opt-in Plaintiff's estimate of days and hours worked (capped at six (6) shifts per week and six (6) hours per shift.) (*Id.* ¶ 10.)

Two formulas were used to calculate damages. The formula and variables necessary to calculate damages for the minimum wage claim, and reimbursement for the fines and house fees for the Opt-in Plaintiffs is below:

> <u>Minimum wage</u>: ($8.25[2] * (hours per shift * shifts per week * weeks worked during May 26, 2012 through October 5, 2015); plus

> <u>House Fees</u>: ($55 * (shifts per week * weeks worked during May 26, 2012 through October 5, 2015)); plus

> <u>Fines</u>: ($10 * weeks worked during May 26, 2012 through October 5, 2015).

(*Id.* ¶ 11.)

Damages for the Eligible Rule 23 Claimants are calculated differently. Defendant did not maintain any records of Eligible Rule 23 Claimants' dates of employment, days or hours worked, or the fines and fees they paid to work, and Plaintiffs' Counsel were unable to interview them because they did not opt-in to this case. (*Id.* ¶ 12.) To determine reasonable dates of employment, Plaintiffs applied the good-faith estimate of the Rule 23 Class Representative, Aleigha Woods. (*Id.* ¶ 13.) Named Plaintiff Woods estimates that she worked approximately 80 weeks for Defendants. (*Id.*) Plaintiffs next applied the opt-in Plaintiffs' average number of shifts worked per week, which resulted in 4 shifts and 24 hours per week. (*Id.*) The formula and variables necessary to calculate damages for the minimum wage claim, and reimbursement for the fines and house fees for the Eligible Rule 23 Claimants is below:

> <u>Minimum wage</u>: ($8.25 * (6 hours per shift * 4 shifts per week * 80 weeks worked); plus

> <u>House Fees</u>: ($55 * (4 shifts per week * 80 weeks worked)); plus

> <u>Fines</u>: ($10 * 80 weeks worked).

---

[2] Under federal law the minimum wage is $7.25 per hour. *See* 29 U.S.C. § 206. However, because the FLSA Opt-ins also have claims under Illinois state law, Illinois minimum wage of $8.25 per hour was applied.

(*Id.* ¶ 14.)

The settlements funds were allocated on a pro rata basis based on these damages calculations. (*Id.* ¶ 15.) Applying these estimates and averages Plaintiffs' Counsel calculated the Eligible Rule 23 Claimants' pro rata damages at $5,434.31 for each of the 65 individuals. (*Id.*)

### C

In accordance with the terms of the parties' Agreement, upon preliminary approval of the settlement by this Court, Plaintiffs' Counsel will distribute three separate Notices to the individuals identified in Exhibits 4-6 to the parties' Agreement. (ECF Nos. 116-4 through 116-6.) The template Notice set forth in Exhibit 6 will be sent to the Opt-in Plaintiffs. The template Notice set forth in Exhibit 5 will be sent to the Eligible Rule 23 Claimants. These Notices inform each Plaintiff of the terms of the settlement, including each Plaintiff's preliminary individual settlement offer from Defendants. (*See* Agreement Exs. 5-6.) The Notices also describe the nature of the claims and defenses in this lawsuit, and the various factors considered in determining individual allocations. (*Id.*) These Notices also explain the release of claims that is part of the settlement and the expected payment period. (*Id.*)

Additionally, as part of the settlement, the parties have agreed that the scope of the settlement class only includes entertainers who worked at Club Cabaret from May 26, 2012 to October 5, 2015. As noted above, on October 21, 2016, Plaintiffs' Notice of Rule 23 Class Action Lawsuit was distributed to the individuals identified in Exhibit 3 to the Agreement. Because these individuals are not within the scope of the settlement class, the parties agree that they must be sent notice advising them as such. Therefore, upon preliminary approval, the parties will distribute a Notice of Ineligibility to those Rule 23 class members who fall outside the scope of this settlement. (*See* Agreement, Ex. 4.) The Notice of Ineligibility explains to the ineligible class members the scope of the settlement, their exclusion from it, and the claims and rights they retain against Defendants. (*Id.*)

### D

In consideration for the settlement payment from Defendants, each Plaintiff is required to return a "Release of Claims Form." (*See* Agreement, Exs. 5-6.) For the Opt-in Plaintiffs, the Release of Claims Form releases Defendants as defined in the Agreement from:

> [A]ll claims, liabilities, demands, obligations, damages, actions, or causes of action that were or could have been asserted in the Action under state and federal wage and hour laws for unpaid minimum wages, overtime premiums, kickbacks, reimbursements, liquidated damages, costs, attorneys' fees and all other forms of legal or equitable relief available related to claims and transactions alleged in the First Amended Complaint that accrued during May 26, 2012 to October 5, 2015.

(*See* Agreement, Ex. 6.)

For the Eligible Rule 23 Claimants, the Release of Claims Form releases Defendants as defined in the Agreement from:

> [A]ll claims, liabilities, demands, obligations, damages, actions, or causes of action that were or could have been asserted in the Action under state wage and hour laws for unpaid minimum wages, overtime premiums, kickbacks, reimbursements, liquidated damages, costs, attorneys' fees and all other forms of legal or equitable relief available related to claims and transactions alleged in the First Amended Complaint that accrued during May 26, 2012 to October 5, 2015.

(*See* Agreement, Ex. 5.)

These releases are narrowly tailored to only release claims related to wages, which is what is at issue in this matter.

## II

Settlement of Federal Rule of Civil Procedure 23 class actions and FLSA claims are subject to court approval. *In re AT & T Mobility Wireless Data Svcs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) ("Rule 23(e) requires court approval of any settlement that effects the dismissal of a class action"); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (requiring settlement of FLSA claims to be approved by either the Department of Labor or a district court). Under Rule 23(e)(2), a court may approve a

settlement in class action litigation if it finds the settlement is "fair, reasonable, and adequate." District court review of a class action settlement proposal is a two-step process. *In re AT & T*, 270 F.R.D. at 346.

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval. This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal within the range of possible approval, it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs. Of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas,* 134 F3d 873 (7th Cir. 1998) (internal citation omitted).

In deciding whether to preliminarily approve a settlement, a court must consider: (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) an assessment of the likely complexity, length and expense of the litigation; (3) an evaluation of the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Synfuel Tech., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006) (*citing Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996)). It is "well-established" that compromises of disputed claims are favored by the courts," *Williams v. First Nat. Bank*, 216 U.S. 582, 595, (1910), and the Seventh Circuit has held that "[f]ederal courts naturally favor the settlement of class action litigation," *Isby*, 75 F.3d at 1196.

Under the FLSA, employees may settle their claims if the parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel

and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Paredes v. Monsanto Co.*, 2016 WL 1555649, at *1 (N.D. Ind. Apr. 18, 2016). Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

### III
### A

The strength of Plaintiffs' claims has been viewed as "the most important factor" when determining whether to approve the terms of a proposed settlement. *Butler v. Am. Cable & Tel., LLC,* 2011 WL 4729789, at *10 (N.D. Ill. Oct. 6, 2011); *see also Synfuel Technologies, Inc.*, 463 F.3d at 653. When conducting this analysis, courts should begin by "quantify[ing] the net expected value of continued litigation to the class." *Butler*, 2011 WL 4729789, at *10. While a high degree of precision cannot be expected, the court must insist that the parties present evidence "that would enable possible outcomes to be estimated, so that the court can at least come up with a ballpark valuation." *Id.*

Here, Plaintiffs contend they were misclassified as independent contractors and are entitled to minimum wages under state and federal law. Plaintiffs express confidence that they would prevail on liability if this matter were to proceed to summary judgment, and with good reason. Nearly every court that has considered this issue has determined that exotic dancers are employees—not independent contractors. *See e.g.*, *McFeeley v. Jackson St. Entm't, LLC,* 825 F.3d 235 (4th Cir. 2016); *Reich v. Circle C. Invest.*, Inc., 998 F.2d 324 (5th Cir. 1993); *Mason v. Fantasy, LLC,* 2015 WL 4512327 (D. Colo. July 27, 2015); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Clincy v. Galardi S. Enter., Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *Morse v. Mer Corp.*, 2010 WL 2346334 (S.D. Ind. June 4, 2010).

However, continued litigation in this case, like most, still presents a number of risks. The first risk, and ultimate hurdle in this litigation, is Defendants' ability to pay.

Defendants have represented that their settlement offer of $1,000,000 is as far as they can extend without declaring bankruptcy and future litigation would exhaust these proceeds that are available. (Skemp Decl. ¶ 16.) Plaintiffs have further reviewed Defendant Joseph Miller's personal assets, and do not believe a larger settlement award is feasible (*Id.*) The farther that litigation progresses, the more difficult Plaintiffs' recovery will be and the greater risk that Plaintiffs will be unable to collect on any judgment they would win. *See Butler*, 2011 WL 4729789, at *10 (considering defendant's ability to pay in approving Rule 23 settlement).

The second risk is Plaintiffs' ability to prove damages. During the eligible time period, Defendants failed to keep *any* records that would reflect the days or hours Plaintiffs worked, or the money Plaintiffs paid Defendants in fines, fees, and VIP dance charges. As a result, damages for this time period must be calculated using Plaintiffs' good-faith estimates of hours worked and the amount of compensation paid to Defendants. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."). Plaintiffs' Counsel recognizes the risk that Plaintiffs' estimates will be reduced by a jury.

The third risk is that some of Plaintiffs' claims—specifically, claims for reimbursement of house fees, fines, and VIP dance charges—could be unsuccessful. Defendants dispute that Plaintiffs are entitled to reimbursement of this money, and have also filed numerous counterclaims against Plaintiffs. Plaintiffs' position is that this money should be classified as "gratuities" or "tips," while Defendants claims that these are mandatory, fixed service charges. If this money is a service charge, it can be used to offset any minimum wage liability under state and federal law. *See Hughes, et al. v. Scarlett's G.P., Inc. d/b/a Pink Monkey*, 2016 WL 454348, *1-2 (N.D. Ill. Feb. 5, 2016) (exotic dancers could not recover tips used to pay door fees, dance fees, and tip-outs to the club, DJ, and

"house mom"); *Labriola v. Clinton Entertainment Management, LLC,* 2016 WL 1106862, at *4-5 (N.D. Ill. Mar. 22, 2016) (exotic dancers had no claim under the FLSA and Illinois state law for recovery of "dance fees," "DJ fees," "house fees," "floor fees," and fines paid from tips). Given these recent Illinois decisions, the risk of success of Plaintiffs' claims for reimbursement of house fees, fines, and VIP dances weighs in favor of settlement.

### B

Wage and hour trials are complex, expensive, and unpredictable. In this action, the parties engaged in extensive discovery and briefed FLSA conditional certification, Rule 23 Class Certification, and other discovery and sanctions-related motions. Had this case not settled, the parties would have engaged in significant additional discovery (including discovery from some of the opt-in Plaintiffs), would have likely filed cross-motions on summary judgment, and Defendants would likely have moved to decertify the FLSA Collective and Rule 23 Class. These litigation steps would have been expensive, complex, and protracted. Moreover, if Plaintiffs were to prevail on liability, and on damages at trial, Defendants would likely appeal. This settlement avoids these expenditures of resources for all parties and the Court, and provides significant benefit that settlement class members would not receive if the case proceeded—certain and prompt relief. This factor supports approval of the settlement. *See Mangone v. First USA Bank,* 206 F.R.D. 222, 226 (S.D. Ill. 2001) (*citing Isby,* 75 F.3d at 1199 (where the "continuation of the litigation would require the resolution of many different and complex issues, would entail considerable additional expense, and would likely involve weeks, perhaps months of trial time," the Seventh Circuit upheld trial court's conclusion that "the settlement represented an outcome at least comparable, if not superior, to that which plaintiffs might achieve by proceeding to trial.").

### C

The parties assert that they are currently unaware of opposition to the settlement. Because the parties have not sent notice to affected participants, it is premature to consider this factor. *See Koerner v. Copenhaver,* 2014 WL 5544051, at *5 (C.D. Ill. Nov. 3, 2014).

## D

The fourth factor concerns the opinion of experienced and informed counsel and also considers whether a proposed settlement appears to be the victim of collusion. *See Isby,* 75 F.3d at 1200. Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce,* 690 F.2d 616, 634 (7th Cir. 1982).

Here, the settlement is the product of arm's-length negotiation rather than collusion. The settlement resulted from informed, extensive negotiations, including two private mediation sessions before the Honorable Morton Denlow of JAMs. Moreover, Plaintiffs' Counsel, who have extensive experience in nationwide wage and hour litigation, believe the settlement is fundamentally fair, adequate, and reasonable. (*See* Ex. C Firm Resume.) Counsel's experience in vigorously litigating class/collective wage and hour actions, plus their experience with this industry were essential in obtaining this favorable and efficient result. Having extensively investigated the facts and researched the pivotal legal and factual issues, counsel for the parties, experienced class action litigators well versed in wage and hour law, arrived at a reasonable resolution through a protracted and arm's-length mediation and negotiation process, which continued into all details of the settlement agreement and the proposed class notices.

Finally, comparison of this settlement with others involving misclassification of exotic dancers provides an additional basis for finding the settlement is reasonable and should be approved. This settlement will provide, on average, $5,434.31 to each of the Rule 23 class members, and $8,817.36 to each of the FLSA opt-in Plaintiffs. This settlement is similar to others that have been approved:

- *Jane Doe v. Cin-Lan, Inc.*, Case No. 2:08-CV-12719 (E.D. Mich.) (approving classwide settlement of $11.3 million for class consisting of 22,087 exotic dancers). (*See* Ex. D[3].)

- *Trauth v. Spearmint Rhino Companies Worldwide*, Case No. 5:09-cv-01316 (C.D. Cal.) (approving classwide settlement of $12.97 million for 11,000 exotic dancers). (*See* Ex. E.)

---

[3] Citations in this list are to the Exhibits attached to the parties' memorandum in support of the joint motion. (ECF Nos. 116-5 through 116-14.)

- *Does 1-2 v. Déjà Vu Services, Inc.*, Case No. 2:16-cv-10877 (E.D. Mich.) (granting preliminary approval of $6.5 million for a class consisting of 45,000-50,000 dancers at 64 clubs nationwide). (*See* Ex. F.)

- *Dittus v. K.E.G., Inc.*, Case No. 14-300 (D.S.C.) (settlement obtained payments ranging from $14,000 for dancers who worked for four years to $2,000 for dancers who worked for four months or less). (*See* Ex. G.)

- *Alvarez v. KWLT, Inc.*, Case No. 14-7075 (E.D. Pa.) (settlement obtained an average payment of $5,916 to 30 class members). (*See* Ex. H.)

- *Hart v. RCI Hosp. Holdings, Inc.*, 2015 WL 5577713, at *5, *11 (S.D.N.Y. Sept. 22, 2015) (average payment of $4,255 per class member (assuming full participation of the 2,208 person class). (*See* Ex. I.)

- *Clincy v. Galardi*, No. 09-2082 (N.D. Ga.) (approving $1,550,000 cash settlement of FLSA action on behalf of 80 dancers). (*See* Ex. J.)

- *Eley v. Stadium Grp., LLC*, 2017 WL 663525, at *2 (D.D.C. Feb. 17, 2017) (settlement providing payments of between $1,700 and $17,200 to class members). (*See* Ex. K.)

- *In re Penthouse Exec. Club Compensation Litig.*, Case No. 10-cv-1145 (S.D.N.Y.) (settlement approved with average settlement shares of $4,666.94). (*See* Ex. L.)

- *Jones v. JGC Dallas LLC*, 2014 WL 7332551, at *9 (N.D. Tex. Nov. 12, 2014), *report and recommendation adopted in part*, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014) (approving settlement of $2,300,000 on behalf of 194 plaintiffs, with an average payment of $7,900). (*See* Ex. M.)

Although a settlement of $1,000,000 will not provide a complete victory to Plaintiffs, it does not need to do so. *See E.E.O.C. v. Hiram Walker*, 768 F.2d 884, 889 (7th Cir. 1985). Instead, the settlement provides Plaintiffs with a present victory, meaning they will not need to await a result of uncertain and potentially lengthy litigation. *See In re AT & T*, 270 F.R.D. at 346 (noting that "[c]ontinued litigation carries with it a decrease in the time value of money . . . "). As such, this factor weighs in favor of settlement approval.

E

The final factor is the stage of proceedings and the amount of discovery completed. *Synfuel Technologies, Inc.*, 463 F.3d at 653. This aspect of the case considers "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. Thus, the inquiry is whether the claims' merits may be adequately evaluated.

Here, the parties obtained sufficient discovery to assess the claims and defenses. Defendants produced written discovery responses and documents concerning corporate policies affecting Plaintiffs. Plaintiffs also deposed Joseph Miller, Club Cabaret's president and owner. Plaintiffs also interviewed the Opt-in Plaintiffs and produced written discovery responses to Defendants. All of this information allowed the parties to have a clear view of both sides' strengths and weaknesses. With the discovery conducted there was more than adequate information for the parties to understand their cases and reach a reasonable settlement. This supports a finding that the settlement is fair and adequate.

## F

The Court concludes that this settlement is fair, and, moreover, the reasons that courts have rejected settlement proposals before are not present here. For example, this is not a situation in which compensation will be paid in coupons. *Cf. In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). The class members will not suffer a loss from the deployment of a common fund, in which they might be liable for Plaintiff's Counsel's fees. *Cf. Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348 (7th Cir. 1996). No class member who chooses to participate in the settlement will go home empty-handed, receiving only "emotional satisfaction." *Cf. Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 783 (7th Cir. 2004). And Plaintiffs' Counsel has ensured that any unclaimed funds will be redistributed to the Settling Plaintiffs—not Defendant. *Cf. Butler*, 2011 WL 4729789, at *1 (settlement initially denied because of the reversion of unclaimed funds). This settlement provides substantial value to those individuals who choose to participate in it, which supports the Court's approval thereof.

## IV

A *bona fide* dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due. *Houston v. URS Corp.*, 2009 WL 2474055, at *9 (E.D. Va. Aug. 7, 2009). In reviewing the settlement of a plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Grp. LLC,* 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*

A *bona fide* dispute exists in this case as the liability and damages issues were hotly contested. Plaintiffs claim that Defendants failed to pay them minimum wages and illegally took their tips in the form of house fees and fines. Defendants deny these allegations. On top of these alleged unpaid-wage issues, the parties also had opposing views on other damages components such as liquidated damages and whether a three year statute of limitations period applied.

Although both parties assert that they continue to believe in the merits of a majority of their respective claims and defenses, given the information learned throughout discovery, the time and expense associated with continuing on with this matter, and the uncertainty of dispositive motion practice and trial, the parties agree that a compromise is appropriate at this stage of the litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."). For these reasons, and those articulated above, the Court preliminarily approves the settlement.

## V

As part of this settlement, the Court must direct "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). "The notice must be straightforward

and must accurately lay out the proposed settlement—it must concisely and clearly state in plain, easily understood language the nature of the action, the definition of the class certified, and the class claims, issues, or defenses." *Wyms v. Staffing Sols. Se., Inc.*, 2016 WL 6395740, at *4 (S.D. Ill. Oct. 28, 2016) (*quoting* Fed. R. Civ. P. 23(c)(2)(B)).. In terms of distributing notice, "[w]hen class members can be identified through reasonable effort, they are entitled to individual notice." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 231 (N.D. Ill. 2016). However, "[n]either Rule 23 nor due process require 'receipt of actual notice by all class members'; rather, 'notice should be mailed to the last known addresses of those who can be identified and publication used to notify others . . . .'" *Mangone*, 206 F.R.D. at 231–32 (*quoting 2 Newberg On Class Actions,* § 8.02 (3rd Ed.1992) (citing *Manual For Complex Litigation, Second* ¶ 30.211 (2d Ed. 1985)).

Here, the Agreement provides for Plaintiffs' Counsel to distribute three separate notices: one to the FLSA Opt-in Plaintiffs; one to the Eligible Rule 23 Claimants; and one to the Ineligible Entertainers. (*See* Exs. 4-6 to the Agreement). The notice forms to be sent to the FLSA Opt-in Plaintiffs and Eligible Rule 23 Claimants clearly identify the options available to them and comprehensively explain the nature and mechanics of the settlement. (*Id.*) Similarly, the notice form to the Ineligible Entertainers clearly explains why they are not included within the scope of this settlement and the process for disputing their ineligibility. (*Id.*) Moreover, these notices will be sent directly to the FLSA Opt-in Plaintiffs and Eligible Rule 23 Claimants by U.S. Mail to the last-known mailing address. As such, the Court approves the notice distribution procedures and the forms provided within the Settlement Agreement. *See Mangone*, 206 F.R.D. at 231–32.

Next, the parties ask the Court to approve their proposed claims process. Courts "evaluate claims processes to ensure that they are fair and reasonable and not so burdensome as to discourage class members from submitting claims." *Gehrich.*, 316 F.R.D. at 232 (*citing Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 590–91 (N.D. Ill. 2011)). Here, all that is required to participate in the settlement is filling out a simple, one-page form that requires the dancer's name, contact information, and last four digits of their social security number. (*See* Agreement, Exs. 5-6.) This claims process is also approved.

## VI

Under the terms of their Agreement, Plaintiffs' Counsel will seek attorneys' fees from the common fund in the amount of 25%, and reimbursement of their out-of-pocket litigation expenses in the amount of $29,258.28. Plaintiffs note that they will provide detailed briefing on their request for attorneys' fees and costs in a separate motion. However, because attorneys' fees factor into the fairness of the settlement, Plaintiffs' Counsel provided the Court with a summary of this analysis to facilitate approval.

## A

In Illinois, "[c]ourts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements." *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016) (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005) (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 842 (N.D. Ill. 2015) (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); 3 Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]"); *see also Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016).

Plaintiffs' Counsel's request for 25% of the common fund in attorneys' fees, or $250,000, is appropriate for several reasons. First, 25% is well below the percentage of the common-fund typically awarded in wage-and-hour settlements. *See id.* Second, although unnecessary, a lodestar cross-check confirms Plaintiffs' Counsel's requested fees are appropriate. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) (*citing Cook v. Niedert,* 142 F.3d 1004, 1013 (7th Cir.1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.")). A

preliminary analysis of Plaintiffs' Counsel's billing records indicates that Nichols Kaster has expended approximately $354,207.25 in fees to date, which is well above the $250,000 they request now. (Skemp Decl. ¶ 17.) Third, Plaintiffs Counsel's private agreements with their clients (the Opt-in Plaintiffs) provide for payment of attorneys' fees up to 33.33% of the common fund, however, Plaintiffs' Counsel has chosen to forgo that extra compensation so that the remainder can be distributed to the settlement class members. Finally, Plaintiffs' Counsel handled this case on a contingency-fee basis, and have not received any payment for their time spent litigating the case nor have they been reimbursed for their out of pocket costs during the litigation. Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation. These facts weigh in favor of granting Plaintiffs' Counsel's requested attorneys' fees. *See Koszyk*, 2016 WL 5109196, at *4-5 (granting requested fees as Plaintiffs' Counsel "took on a significant degree of risk of nonpayment in agreeing to represent Plaintiffs").

Given that Plaintiffs' Counsel seeks a modest fee award, the Court grants the Plaintiffs' request that the Court defer a detailed attorneys' fee analysis until the motion for attorneys' fees that the Plaintiffs assert will follow. This deferral is appropriate since the factors considered in assessing whether the fee award is fair and reasonable (the results obtained, the risk of litigation, the skill required, the quality of the work performed, the contingent nature of the fee, and awards in similar cases) partially depend on class members' responses to the notice of settlement.

**B**

Plaintiffs' Counsel further seeks approval of $29,258.28 in costs. Payment of these costs is already factored into the preliminary allocation. Plaintiffs' Counsel has incurred $27,758.28 in unreimbursed costs during this litigation which it advanced on behalf of Plaintiffs, and seeks $1,500 for anticipated future costs associated with administering the settlement. (Skemp Decl. ¶ 18; *see also* Ex. N, cost report.) These future additional costs include the costs associated with finalizing the settlement (for example, attending a hearing on this motion and the final approval hearing), printing and distributing the notices of settlement, and preparing and distributing three separate settlement checks,

and income tax forms, to the participating Settlement Class members. Plaintiffs' Counsel asserts that it will provide details of these costs in subsequent briefing. Plaintiffs' Counsel therefore requests, and Defendants do not oppose, reimbursement of $29,258.28 in costs. To the extent total costs are less than $29,258.28, the parties note that any unexpended amount will be included in the final settlement allocation for participating settlement class members. The Court approves reimbursement of costs. *See Koszyk*, 2016 WL 5109196, at *4–5 (reimbursing costs incurred for case-related travel, electronic research, court fees, court reporters, postage and courier fees, working meals, photocopies, telephone calls, travel, and mediator's fees).

## VII

Under the terms of the parties' Settlement Agreement, in addition to their individualized allocation, Plaintiffs request a $5,000 service payment to Named Plaintiff Aleigha Woods and $500 each to Opt-in Plaintiffs Lisa McMahon and Dawn Alvarez in recognition of their time and efforts in pursuing this case. (See Agreement §§ 1.33, 3.4.)

"Service payments are commonly awarded to those who serve the interests of the class." *Koszyk*, 2016 WL 5109196, at *2 (*citing Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases)). This is especially true in employment litigation. *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (*citing Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.")). Moreover, service awards serve the "important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Castillo*, 2016 WL 7451626, at *2.

Here, Named Plaintiff Aleigha Woods undertook substantial efforts to protect the class and advance their interests. The Named Plaintiff initiated this lawsuit over two years ago, and spent considerable time being interviewed by and providing documents

to Plaintiffs' Counsel. (Skemp Decl. ¶ 19.) The Named Plaintiff also provided declarations in support of conditional certification and invaluable information used to prepare Plaintiffs' Counsel for the deposition of Defendant's corporate representative and mediation, which she attended in Chicago, Illinois. (*Id.*) Moreover, the Named Plaintiff alleges she faced retaliation for her involvement in this lawsuit. *See* ECF No. 68-13 (Woods Decl. ¶¶ 3-6) (alleging Defendants convinced her current employer to terminate her and that Defendants threatened to expose "secrets" about her and start rumors relating to her child-custody situation). Without Ms. Woods initiating this action, there would be no settlement for any of the class members. For these reasons, the Court approves the Plaintiffs' request that the Named Plaintiff be awarded $5,000 for her time and effort in this matter. *See Koszyk*, 2016 WL 5109196, at *2 (granting service payment in the amount of $10,000 to each named plaintiff); *Castillo*, 2016 WL 7451626, at *2 (approving service award in the amount of $10,000).

Similarly, Plaintiffs request that the Court approve service awards in the amount of $500 each to Opt-in Plaintiffs Lisa McMahon and Dawn Alvarez. These individuals, like the Named Plaintiff, undertook substantial efforts to protect the class and advance their interests. They prepared for and were present to testify in open Court at the evidentiary hearing relating to Plaintiffs' Motion for a Cease and Desist Order. (Skemp Decl. ¶ 20.) These individuals answered written discovery, and were also instrumental in providing information to Plaintiffs' Counsel in preparation for mediation and Defendant's 30(b)(6) deposition. Similarly, like the Named Plaintiff, these individuals claimed they suffered retaliation for their involvement in this lawsuit. (*See* ECF No. 63-13, McMahon Decl. ¶¶ 5-6 (describing retaliation and alleging Defendants left her voicemails to encourage her to drop out of the lawsuit); Alvarez Decl. ¶¶ 2-4 (alleging Defendant Joseph Miller verbally threatened her). Plaintiffs' modest request that these Opt-in Plaintiffs be awarded $500 is also approved.

## VIII

This hybrid FLSA and Rule 23 Class Action settlement is a product of arm's-length negotiation between counsel for the parties that has resolved a *bona fide* dispute. For the

reasons set forth, *supra*, the Court GRANTS the joint motion for preliminary approval of the settlement and ORDERS distribution of notice as proposed by the parties.

*It is so ordered.*

Entered on May 17, 2017

s/Jonathan E. Hawley
U.S. Magistrate Judge